UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

AFFIDAVIT IN SUPPORT OF ARREST WARRANT

I, Benjamin D. Lewis, hereinafter referred to as your affiant, a Special Agent of the Federal Bureau of Investigation (FBI), being duly sworn, state and depose as follows:

BACKGROUND

1. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been so since October, 2023. I am currently assigned to the FBI's San Juan Division, Violent Crimes / Major Offenders Squad. As an FBI Special Agent I have received extensive training in a variety of investigative and legal matters of violations of federal and state law. Your affiant is "an investigative or law enforcement officer of the United States" within the meaning of Section 2510 (7) of Title 18, United States Code. Your affiant is therefore, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, the offenses enumerated in Title 18, United States Code. During my employment with the FBI, I have participated in various violent crime operations and investigations along with experienced FBI Special Agents (SAs) and other Task Force Officers (TFOs).

2. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 USC 1951 Hobbs Act Robbery (Interference With Commerce by Robbery), 18 USC 924 (c)(1)(a)(ii) Use of a Firearm in Commission of a Violent Crime, Brandishing have been committed.

3. The information contained in this affidavit was obtained from the investigation conducted by your affiant in addition to information provided to your affiant by other local and federal law enforcement agents. Because this affidavit is made for the limited purpose of establishing probable cause for the arrest warrant, your affiant has not recited each and every fact known to your affiant as a result of this investigation.

## RELEVANT FACTUAL ALLEGATIONS

4. On June 19, 2025, the Police of Puerto Rico (POPR) responded to a call for an armed robbery, which had occurred at the KRAZY PAWN CASA DE EMPENO Y JOYERIA (KRAZY PAWN), located in Bayamon, Puerto Rico.

5. KRAZY PAWN employees S.I.H.M (hereinafter, VICTIM 1), M.A.L.V (hereinafter, VICTIM 2), J.M.O (hereinafter, VICTIM 3), and KRAZY PAWN Security Guard O.D.J.R (hereinafter, VICTIM 4), were working in the business, when at approximately 10:21 AM an male unidentified subject (hereinafter, UNSUB 1) without a mask in an orange-in-color shirt with a white logo rang the doorbell to the business.



*Still images from CCTV Footage showing UNSUB 1 approaching the door*

6. VICTIM 2, who was working behind the counter, pressed a button to allow UNSUB 1 entry into the business through the front door. UNSUB 1 then attempted to open the door to the business but was temporarily impeded by the security mechanism of the door and could not open it immediately. UNSUB 1 was able to open the front door of the business, at which point, five (5) other armed UNSUBS immediately approached the door as it was opened. One of

these UNSUBS hit UNSUB 1 over the head with a firearm before rushing in through the opened door and into the vestibule area of the business.



*Still images from CCTV Footage showing UNSUB 1 opening the door and another UNSUB striking him.*

7. The 5 UNSUBS were dressed in dark clothing with their faces covered, wearing different masks, wearing gloves and carrying firearms. Some UNSUBS had backpacks hung on their shoulders in a forward-facing position.

8. One of the armed UNSUBS was wearing a costume mask (hereinafter, UNSUB 2), which was distinct from the others.

9. The UNSUBS began striking the glass of the vestibule to enter the main showroom floor of the business.



*UNSUB 2 shown in a still image from CCTV Footage wearing a distinct mask during the robbery*

10. The UNSUBS pointed their firearms at VICTIM 4 and disarmed him of a Smith and Wesson .40 caliber firearm, stealing it from him. While disarming him, one of the UNSUBS struck VICTIM 4 over the head with the magazine of one of their firearms. VICTIM 4 was ordered to the floor and remained there during the duration of the robbery, while armed UNSUBS monitored him.



*Still images from CCTV Footage shows armed UNSUBS entering business and pointing their weapons at VICTIM 4, as well as armed UNSUBS monitoring VICTIM 4.*

11. VICTIM 4 recalled one of the armed UNSUBS counting down during the duration of the robbery and letting the other armed UNSUBS of the time left.

12. Upon observing the armed UNSUBS enter the business, VICTIM 2 and VICTIM 3 behind the counter fled to the back of the business and entered the manager's office, where they informed VICTIM 1 of the ongoing armed robbery.

13. The VICTIM 1 observed the armed UNSUBS who had made entry into the business and drew his Glock 43 model firearm, chambered in 9mm. VICTIM 1 fired one shot at the armed UNSUBS through the security glass of the office. The armed UNSUBS continued their robbery. VICTIM I then hit the panic alarm and dialed the 911 emergency line, informing the dispatcher of the robbery. VICTIM 1, 2, and 3 all took cover in the office for the rest of the duration of the robbery.

14. The UNSUBS broke through the glass to gain access behind the employee counter area. UNSUB 2 ran behind the counter to the jewelry portion of the business, which is sectioned off to customers by a security door. Closed Circuit Television (CCTV) security footage from the store's cameras shows a cellphone falling out of UNSUB 2's pocket and onto the floor, during their movement to the jewelry portion of the pawn shop.



*CCTV Footage of UNSUB 2 moving behind the counter and dropping a cellphone.*

15. The UNSUBS removed jewelry from the displays in the jewelry section of the business and put the jewelry into the backpacks and bags with which they had entered the business. One of

the UNSUBS held an unidentified number of jewelry items in their hands while collecting the jewelry. An armed UNSUB then notified the other armed UNSUBS the time had ran out and all UNSUBS exited the business, entering a white Mitsubishi Outlander.



*Still images from CCTV Footage showing UNSUBS storing jewelry into their bags and exiting the business with the stolen jewelry in hand.*

16. P.O.P.R and the Bayamon Municipal Police Department (B.M.P.D) responded to the scene of the robbery shortly after and began their investigation.

17. Throughout the course of the investigation, a search warrant was obtained for the phone that was left at the scene, Case No. 25-656 (M) (July 16, 2025). Upon review of this phone, several suspects were identified to include **Jared Gabriel Santiago-Pacheo** as the owner of the phone.

18. On October 16, 2025, your affiant was notified by P.O.P.R. Arrestos Especiales that **Santiago-Pacheco** had been arrested earlier that day pursuant to an active arrest warrant against him for state charges involving a shooting on September 7, 2025. Pursuant to state Court documents **Santiago-Pacheco** shot at victim A.D.S.G. with a black firearm causing damages to the victim's vehicle.

19. Incident to the arrest, in defendants home, P.O.P.R. Arrestos Especiales seized a modified Glock pistol, several magazines and bullets, a rifle, rifle ammunition, approximately one pound of marijuana, three cellular phones, several gold chains, and other items.

20. FBI Agents went to the P.O.P.R. Precinct to investigate further. **Santiago-Pacheco** was read his Miranda rights, stated he understood them, and that he wanted to speak with Federal Agents and waving his rights. Your affiant as well as FBI Task Force Officers Ana Camacho and Brenda Matias proceeded to interview Santiago-Pacheco.

21. During the interview **Santiago-Pacheco** admitted to having planned, led, and participated in the robbery that occurred on June 19, 2025, at the KRAZY PAWN CASA DE EMPEÑO. **Santiago-Pacheco** stated that he was the first to enter the store, that he was wearing all black, wore a smiley-face costume mask, pointed his firearm at the security guard, stole several chains from the establishment, and fled in a white Mitsubishi.

22. **Santiago-Pacheco** also admitted that it was his phone that was dropped inside the store during the robbery and that he considered returning for it but decided to abandon it.

23. **Santiago-Pacheco** explained that nine people in total were involved in this robbery. That one opened the door for five others who entered and committed the robbery. Three people were outside acting as lookouts, one in a white Mazda and the other two on motorcycles.

24. KRAZY PAWN CASA DE EMPENO Y JOYERIA (KRAZY PAWN), is a business that as a result of the **Santiago-Pacheco**'s actions, interstate commerce, or an item moving in interstate commerce, was actually or potentially delayed, obstructed, or affected in any way or degree.

**CONCLUSION**

1. Based on the information above, your affiant submits that there is probable cause to believe that **JARED GABRIEL SANTIAGO-PACHECO** violated the following federal offenses: 18 U.S.C. § 1951, Hobbs Act Robbery (Interference With Commerce by Robbery) and 18 USC 924 (c)(1)(a)(ii) Use of a Firearm in Commission of a Violent Crime, Brandishing have been committed.

I hereby declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge.

_____
**Benjamin D. Lewis**
Special Agent
Federal Bureau of Investigation

Sworn in accordance with the requirement of Fed. R. Crim. P. 4.1 by telephone at 11:56 AM on this 17th day of October 2025.

_____
Hon. Marcos E. López
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF PUERTO RICO